**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Donald Price, et al.</u>

        v.                            Civil No. 01-cv-155-JM
                                      Opinion No. 2006 DNH 043
<u>Canadian Airlines, et al.</u>

**<u>O R D E R</u>**

The Plaintiffs, New Hampshire residents, claim that the
Defendants are liable in negligence because Canadian Airlines
employees proximately caused Donald Price to suffer injuries in
accidents that occurred on May 27 and May 28, 2000.[1]  The first
accident occurred while Mr. Price was traveling as a passenger on
a Canadian Airlines flight.  The second accident occurred while
Mr. Price was walking in an airport.  Defendants move for partial
summary judgment as to the claim that the Defendants are liable
for the accident in the airport.  The Plaintiffs object.  For the
reasons set forth below, the motion is granted.

_____

[1]Defendants Canadian Airlines and Air Canada merged after
the events at issue in this lawsuit.  The merged company
continued to do business as Air Canada.  <u>See</u> Document No. 20.
Since the instant motion is concerned with whether the acts or
omissions of Canadian Airlines employees constitutes actionable
negligence, I refer either to Canadian Airlines or to the
Defendants collectively.

Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one "that might affect the outcome of the suit." Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden,

2

could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment.  Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).[2]

## Background

Plaintiffs allege that on May 27, 2000, during a Canadian Airlines flight from Hong Kong, China, to Vancouver, Canada, a flight attendant struck Donald Price's right knee with a food cart injuring his knee.  The flight attendant gave Mr. Price an ice pack and aspirin.  He was moved to the rear of the plane to a seat where he was able to straighten his leg.

After the flight landed, Canadian Airlines provided a

---

[2]With their objection, Plaintiffs filed a document entitled Plaintiffs' Memorandum in Support of Their Objection to Defendant's Motion for Partial Summary Judgment and Affidavit. See Document No. 18.  It appears that the Plaintiffs intend the memorandum's fact section to substitute for separate affidavits from Donald and Dorothea Price.  The Plaintiffs swear under oath to the truth of the facts contained in the document at page 13. Although this joint memorandum and affidavit format is unconventional and inconsistent with this court's local rules, in the interests of justice, I treat it as sufficient to set forth the facts that Plaintiffs contend demonstrate that there is a genuine issue for trial under Fed. R. Civ. P. 56(e).

wheelchair for Mr. Price because he was having difficulty walking.  As the Prices were getting off the plane, Captain Ball, who was in charge of the flight, told Mrs. Price to "make sure you get a wheelchair tomorrow" for Mr. Price.  The Prices spent the evening in Vancouver since their next flight, from Vancouver to Boston, Massachusetts, was scheduled to depart the next day.

On May 28, 2000, the Prices arrived early at the Vancouver Airport for their 2:00 p.m. flight to Boston.  At the Canadian Airlines check-in counter, Mrs. Price informed Katherine Fenton, a Canadian Airlines customer service agent, that Mr. Price's knee was injured on a Canadian Airlines flight the previous day.  Mrs. Price informed Ms. Fenton that Mr. Price needed a wheelchair because he was still experiencing pain in his knee and was having difficulty walking.  Mrs. Price alleges that she told Ms. Fenton that: "we need help because the concourse is a half mile down and two lower levels."

The Plaintiffs allege that Ms. Fenton told them, in substance, that no wheelchairs were available, and that the airline staff was too busy to go get one.  They further allege that although they asked to speak with a supervisor, Ms. Fenton told them that the supervisor was not available.  According to

4

the Plaintiffs, Ms. Fenton eventually gave them their boarding passes and asked them to "please go on."

The Prices walked slowly away from the check-in counter because of Mr. Price's knee condition.  They were headed toward U.S. Customs, which was necessary in order for them to board their flight to Boston.  The area through which the Prices were walking was very crowded with passengers, many of whom were moving quickly past the Prices pushing luggage trolleys.  Mr. Price heard a woman behind him complaining that he was walking too slow and telling another person to go around him.

Mr. Price alleges that as he was walking down a ramp, he became concerned for his safety and tried to move to an area away from the crowd.  An unknown pedestrian traveler, who was pushing a luggage trolley, struck Mr. Price with the trolley.  The trolley was stacked very high with luggage and the person pushing it did not have a clear unobstructed view in front of him.

After he was hit by the trolley, Mr. Price fell to the floor.  He was picked up off the floor by persons who Mr. Price believes were airport security employees and helped into a wheelchair.  Mr. Price suffered injuries from this fall.

The Prices filed this lawsuit on May 1, 2001.  Mr. Price

claims that the Defendants are liable in negligence for proximately causing the injuries that he sustained during his flight on May 27, 2000, and in the Vancouver Airport on May 28, 2000.  Mrs. Price asserts a loss of consortium claim.

During discovery, the Defendants propounded written interrogatories to the Plaintiffs and took Mr. Price's deposition.  In response to the Defendants' inquiries regarding the fault that Mr. Price attributed to the Defendants pertaining to the accident in the airport, Mr. Price alleged that Canadian Airlines was responsible for causing that accident because its employee refused to provide him a wheelchair.

To support their claims, the Plaintiffs took the depositions of Ms. Fenton and Lilly Ip, a Canadian Airlines flight attendant. Ms. Fenton testified that the area of the airport where Mr. Price was injured was neither owned nor controlled by Canadian Airlines.  She further testified that it is likely that people with luggage trolleys would be in that area.  Ms. Ip testified that the Vancouver Airport is busy, that she has noticed persons pushing luggage trolleys stacked up high, and that in such instances it would be difficult for the person pushing the trolley to see the people in front of him or her.  Ms. Ip further

testified that people often push the luggage trolleys quickly and
that they can be dangerous.

Discussion

I.   Elements of a Negligence Claim

In order to recover damages on a negligence claim under New
Hampshire law, the plaintiff must show that "there exists a duty,
whose breach by the defendant causes the injury for which the
plaintiff seeks to recover." Simpson v. Calivas, 139 N.H. 1, 4,
650 A.2d 318, 321 (1994); see also Goodwin v. James, 134 N.H.
579, 583, 595 A.2d 504, 507 (1991) (same).  Accordingly, a
plaintiff must establish each of the following elements in order
to prove his claim: "(1) the defendant owed the plaintiff a duty,
(2) the defendant breached the duty, and (3) as a result of the
breach, the plaintiff suffered injuries." Gilbert v. Essex
Group, Inc., 930 F. Supp. 683, 690 (D.N.H. 1993).

II.  Duty Principles

An accepted maxim in negligence law is that all persons
"have a duty to exercise reasonable care not to subject others to
an unreasonable risk of harm." Millis v. Fouts, 144 N.H. 446,
448, 744 A.2d 81, 84 (1999) (quoting Walls v. Oxford Mgmt. Co.,
Inc., 137 N.H. 653, 656, 633 A.2d 103, 104 (1993)).  Another

well-recognized principle of negligence law, however, is that
"[u]nder common law, inaction rarely gives rise to liability
unless some special duty of care exists."  Hasenfus v.
LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999)); see also
Restatement (Second) of Torts § 314 (1965) ("The fact that the
actor realizes or should realize that action on his part is
necessary for another's aid or protection does not of itself
impose upon him a duty to take such action.").  Therefore, the
determination that a duty of care exists under common law is
ordinarily founded either upon a party's actions, or upon a
special relationship that exists between the parties.  Walls, 137
N.H. at 656, 633 A.2d at 105.

Whether the plaintiff alleges that a duty exists based on a
party's actions or on the existence of a special relationship,
the foreseeability of the risk of harm to the plaintiff can act
as a limitation on the defendant's liability.  Id. at 656, 633
A.2d at 105; see also Manchenton v. Auto Leasing Corp., 135 N.H.
298, 304, 605 A.2d 208, 213 (1992) (the concepts of duty and
foreseeability are inextricably bound together).  A defendant
will generally not be held liable for negligence "if he could not
reasonably foresee that his conduct would result in an injury or

if his conduct was reasonable in light of what he could anticipate." Goodwin, 134 N.H. at 583, 595 A.2d at 507.  The New Hampshire Supreme Court has stated repeatedly that "[n]ot every risk that might be foreseen gives rise to a duty to avoid a course of conduct; a duty arises because the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous." Manchenton, 135 N.H. at 305, 605 A.2d at 214; see also Thibeault v. Campbell, 136 N.H. 698, 701, 622 A.2d 212, 214 (1993) (same); Millis, 144 N.H. 446, 449, 744 A.2d 81, 84 (1999) (same).

The determination of whether a duty exists in a particular case is a question of law to be determined by the trial court. Sintros v. Hamon, 148 N.H. 478, 480, 810 A.2d 553, 555 (2002); Millis, 144 N.H. at 448, 744 A.2d at 84; Walls, 137 N.H. at 656, 633 A.2d at 104.  A finding that a duty exists rests "on a judicial determination that the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." Walls, 137 N.H. at 657, 633 N.H. at 105 (quoting Libbey v. Hampton Water Works Co., 118 N.H. 500, 502, 389 A.2d 434, 435 (1978)).

With these duty principles in mind, I consider whether the

Defendants owed Mr. Price a duty to conform to a standard of conduct in order to prevent the accidents that occurred on the Canadian Airlines flight and in the Vancouver Airport.

III. <u>The Food Cart Accident</u>

Since the Plaintiffs' theory of liability pertaining to the accident in the airport stems from the injury he sustained the previous day on a Canadian Airlines flight, it is necessary to discuss the accident on the airplane first.  The Plaintiffs allege that on May 27, 2000 a Canadian Airlines employee struck Mr. Price's right knee with a food cart while Mr. Price was a passenger on a Canadian Airlines airplane causing injury to Mr. Price's knee.  As a common carrier, Canadian Airlines owed its passengers a duty to use a high degree of care for their safety, including while moving food carts throughout the plane.  <u>See e.g.</u>, <u>Beaudet v. Boston & Maine R.R.</u>, 101 N.H. 4, 5, 131 A.2d 65, 66 (1957) ("A common carrier of passengers for hire must use great caution to protect them consistent with the practical operation of the business.").  There are no facts before me that show either that Mr. Price, or any other passenger on the plane, took any action that caused the food cart to strike Mr. Price's knee.  Therefore, the Plaintiffs have sufficiently alleged facts

that could support a finding that the food cart accident was the result of a breach of the duty owed by Canadian Airlines to use due care when moving a food cart about the airplane.

The facts further support a finding that the injury that Mr. Price sustained in the food cart accident limited his mobility to such an extent that he needed assistance moving about after his flight from Hong Kong to Vancouver landed.  Plaintiffs allege that Canadian Airlines provided him a wheelchair for that purpose.  The Plaintiffs further allege, and the Defendants do not dispute, that Mr. Price's physical condition was still impaired due to the effects of the knee injury that he suffered on May 27, 2000 when he returned to the Vancouver Airport to catch his flight to Boston on May 28, 2000.

IV.  <u>The Airport Accident</u>

Defendants argue that, as a matter of law, they may not be held liable for the injuries that Mr. Price suffered in the Vancouver Airport on May 28, 2000 because those injuries were caused by the negligence of an unknown pedestrian traveler. Defendants argue that Canadian Airlines had no duty to protect Mr. Price from harm caused by a third party, particularly in an area of the airport that they did not control.

The Prices assert that Canadian Airlines owed Mr. Price a
duty of care under the facts of this case for three reasons.
First, Canadian Airlines had a duty to protect Mr. Price from
harm arising from the special relationship between the Prices and
Canadian Airlines as passenger/common carrier.  Second, Canadian
Airlines owed Mr. Price a duty under general negligence
principles because the negligent conduct of a Canadian Airlines
employee caused the injury that required the use of a wheelchair.
And third, Canadian Airlines had a general duty under New
Hampshire law to protect disabled persons.  I consider the merits
of these arguments next.

    A.   <u>Duty Arising From Special Relationship</u>

The Restatement (Second) of Torts, § 314A provides that:

> (1) A common carrier is under a duty to its passengers
> to take reasonable action
>
> (a) to protect them against unreasonable risk of
> physical harm, and
>
> (b) to give them first aid after it knows or has reason
> to know that they are ill or injured, and to care for
> them until they can be cared for by others.

Restatement (Second) of Torts, § 314A (1965).  The American Law
Institute's comments on § 314A discuss the extent of the duty
arising from a special relationship such as the relationship

between a common carrier and a passenger.  The comments provide in relevant part that:

> In the case of an ill or injured person, [the carrier] will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained.

Restatement (Second) of Torts, § 314A, cmt. f.  The comments further indicate that "[a] carrier is under no duty to one who has left the vehicle and ceased to be a passenger." Id., § 314A, cmt. c.

Here, the facts show that after Mr. Price's right knee was struck by a food cart, a Canadian Airlines flight attendant moved him to a more convenient seat, provided him an ice pack and gave him aspirin.  The facts further show that after the Hong Kong to Vancouver flight landed, Canadian Airlines provided Mr. Price a wheelchair because he was having difficulty walking.  There are no facts in the record that show that Mr. Price required any additional assistance immediately after the food cart accident. From all that appears from the record, the Plaintiffs left Canadian Airlines' airplane, and the Vancouver Airport, on May 27, 2000 without further incident.  Applying the law as set forth in Comment c. to § 314A of the Restatement, Canadian Airlines'

duty as a common carrier to assist Mr. Price ended after Mr. Price was safely off the airplane and it was apparent that he did not immediately require further medical attention for his knee injury.

In support of their contention that Canadian Airlines owed Mr. Price a duty to assist and protect him in moving through the airport on May 28, 2000, Plaintiffs cite another comment to § 314A, which provides in relevant part that: "[t]he duty to protect the other against unreasonable risk of harm extends to risks arising . . . from the acts of third persons, whether they be innocent, negligent, intentional, or even criminal." Restatement (Second) of Torts § 314A, cmt. d.  This comment may not be taken in isolation; it must be read with the limitation on a common carrier's duty to a passenger who has left the vehicle. Id. at cmt. c.  In this case, at the time of Mr. Price's accident in the airport, he was not a passenger on a Canadian Airlines airplane and had not been since the previous day.  Therefore, Canadian Airlines' duty as a common carrier does not extend to the incident in the airport.

Plaintiffs' argument that Canadian Airlines owed Mr. Price a duty of care because he was in "the boarding process" at the time

of the airport accident is unpersuasive.  In <u>Beaudet</u>, a case upon which the Plaintiffs rely, the plaintiff alleged that the defendant was negligent after the plaintiff suffered injuries while descending the steps of a railroad car.  101 N.H. at 6, 131 A.2d at 68.  The facts of the instant case are distinguishable.  Here, the Plaintiffs allege that they were walking towards U.S. Customs at the time of the accident.  Mr. Price was not at an airport gate attempting to get onto a Canadian Airline's airplane or in another area controlled by Canadian Airlines.  I find that the Plaintiffs' argument that Canadian Airlines owed Mr. Price a duty, arising from the special relationship between a passenger and common carrier, to provide him a wheelchair to prevent an accident anywhere in the airport lacks merit.

  B.   <u>Duty Arising From Canadian Airlines' Actions</u>

  Plaintiffs assert that Mr. Price's right knee was still in such an impaired condition on May 28, 2000 that his mobility was limited as he tried to move through the Vancouver Airport.  Despite being informed of Mr. Price's impaired physical condition, and the accident on the preceding day that caused it, Ms. Fenton, a Canadian Airlines employee, neither obtained a wheelchair for Mr. Price, nor provided him any other assistance

15

to aid him in moving through the airport so that he could board
his flight from Vancouver to Boston.

The Plaintiffs argue that under the facts of this case,
Canadian Airlines owed Mr. Price a duty to protect him in the
airport because the negligence of a Canadian Airlines employee
caused his impairment.  The Plaintiffs rely on a statement of the
law set forth in § 322 of the Restatement (Second) of Torts.
Section 322 provides that:

> If the actor knows or has reason to know that by his
> conduct, whether tortious or innocent, he has caused
> such bodily harm to another as to make him helpless and
> in danger of further harm, the actor is under a duty to
> exercise reasonable care to prevent further harm.

There are no facts in the record, however, upon which a
reasonable jury could conclude that the Defendants left Mr. Price
helpless and in danger of further harm after the food cart
accident.  To the contrary, during the time when the airline had
a duty to assist Mr. Price, Canadian Airlines provided him with
all the assistance he required.  The injury that Mr. Price
received in the airport was remote in time and place from the
negligent conduct of Canadian Airlines' flight attendant.  The
Plaintiffs have not provided any support for their contention
that Canadian Airlines' duty to render assistance extended into

16

the following day when Mr. Price sought to resume his travels.
See Marshall v. Nugent, 222 F.2d 604, 612 (1st Cir. 1955)
(finding that if the risks to which a defendant has subjected a
plaintiff are entirely over and the situation has become
stabilized, whatever subsequent risks that the plaintiff might
encounter when he resumes his journeys would not be proximately
caused by the defendant because such risks are inseparable from
traveling at all).

The Plaintiffs allege that the Defendants bear continuing
liability in negligence for the injuries Mr. Price sustained in
the airport under the principle that a defendant may be held
liable for injuries that directly resulted from the plaintiff's
impaired physical condition in the first accident.  Although the
Plaintiffs do not cite it, § 460 of the Restatement provides
that:

> If the negligent actor is liable for an injury which
> impairs the physical condition of another's body, the
> actor is also liable for harm sustained in a subsequent
> accident which would not have occurred had the other's
> condition not been impaired, and which is a normal
> consequence of such impairment.

Restatement (Second) of Torts, § 460.  New Hampshire law is in
accord on this point.  See Armstrong v. Bergeron, 104 N.H. 85,
86, 178 A.2d 293, 294 (1962) ("As a general rule if a second

17

injury or an aggravation of a prior one is considered to be a
direct consequence or a natural result of the original injury,
the original wrongdoer is held liable for the entire damage.").

The drafters of the Restatement left open the possibility
that an original tortfeasor could incur liability for injuries
sustained in a second accident even if the later harm resulted
from the subsequent negligence of a third party.  See Caveat on
Restatement (Second) of Torts § 460 ("The Institute expresses no
opinion as to whether the actor whose negligence has weakened the
physical condition of another's body is or is not also liable for
later harm resulting from the subsequent negligence of a third
person.").  The Court finds, however, that this possible
extension of liability is not available under New Hampshire law.

In Armstrong, supra, the plaintiff was struck in the rear by
defendant's car sustaining injuries to her neck and back.
Several months later, the plaintiff was rear-ended by another
negligent motorist aggravating the injuries that the plaintiff
received in the first accident.  The plaintiff claimed that the
defendant was liable for the aggravation caused by the second
accident.  After a trial resulted in a jury verdict in the
plaintiff's favor, the defendant appealed and the New Hampshire

18

Supreme Court reversed.  The court held that: "if a second injury
or an aggravation of a previous injury is attributable to a
distinct intervening cause without which it would not have
happened, the wrongdoer is held to be liable for the original
injury only."  <u>Armstrong</u>, 104 N.H. at 86, 178 A.2d at 294.  In
<u>Armstrong</u>, the original tortfeasor was found to be not liable for
the aggravation of the plaintiff's neck and head injuries
sustained as a result of a distinct intervening cause –- the
second accident.  <u>Id.</u> at 87, 178 A.2d at 294; <u>see also</u>
Annotation, <u>Intervening Conduct of Third Person</u>, 57A Am. Jur. 2d
Negligence § 643 (citing <u>Armstrong</u> for the proposition that "a
negligent actor will not be liable for the aggravation of a
plaintiff's injuries resulting from a second accident caused by
the negligence of a third party, where the aggravation was
attributable to a distinct intervening cause, breaking the causal
chain of connection."); Annotation, <u>Proximate Cause; Liability of</u>
<u>Tortfeasor for Injured Person's Subsequent Injury or Reinjury</u>, 31
A.L.R.3d 1000 § 2[a] ("the courts uniformly recognize that a
tortfeasor whose negligence has caused injury to another is also
liable for any subsequent injury or reinjury that is the
proximate result of the original injury except where the

19

subsequent injury or reinjury was caused . . . by an independent
or intervening act of a third person").  The Court concludes,
based on the reasoning and holding in <u>Armstrong</u>, as well as the
other authorities cited above, that the Defendants may not be
held liable, as a matter of law, for the injuries negligently
caused by the unknown pedestrian traveler who struck Mr. Price
with a luggage trolley in the airport.  Therefore, the Court
finds that the Plaintiffs have not shown that the Defendants may
be held liable in negligence for the injuries that Mr. Price
sustained in the second accident based solely on having caused
the impairment to Mr. Price's knee in the first accident.

     C.   <u>Duty to Assist Disabled Persons</u>

     Plaintiffs appear to argue that the Defendants breached a
general duty under New Hampshire law to protect disabled persons
by failing to provide Mr. Price a wheelchair.  <u>See</u> Pls.' Mem. at
10 (citing provisions of New Hampshire statutes that apply to
disabled persons in the contexts of parking privileges (RSA
265:74), architectural barrier-free design (RSA 275-C:14) and
special education (RSA 186-C)).  Defendants contend that even if
Ms. Fenton refused to obtain a wheelchair for Mr. Price, which
the Defendants dispute, the Defendants would not be liable in

negligence under the facts of this case.  Defendants argue that
the purpose of providing a person a wheelchair is to facilitate
movement in a comfortable and convenient manner, and not to
prevent collisions with negligent third parties.  Thus, they
argue, the failure to provide Mr. Price a wheelchair cannot be
considered the cause of Mr. Price's accident in the airport.

The facts in the record show that the airport accident was
caused by the negligence of a pedestrian traveler who struck Mr.
Price from the rear with a luggage trolley.  Although the
Plaintiffs claim that the Defendants are responsible for causing
that accident, the Plaintiffs' have not shown that the
Defendants' failure to provide Mr. Price a wheelchair presented a
foreseeable and unreasonable risk of the harm alleged to have
occurred in this case.  The law did not impose a duty on the
Defendants to anticipate the careless conduct of another.  See
Piatek v. Swindell, 84 N.H. 402, 151 A. 262, 264 (1930) (a
defendant may not be held liable in negligence for assuming that
another will do his duty when there is no occasion to assume
otherwise); Beaudet, 101 N.H. at 5, 131 A.2d at 67 (finding that
a common carrier is not an insurer of the safety of its
passengers; its liability is based on negligence).  Therefore,

even if the Defendants were aware that the airport was crowded, and could have possibly foreseen that pedestrian travelers with luggage trolleys posed a general threat to other travelers, the Plaintiffs have not shown that the Defendants' failure to provide Mr. Price a wheelchair presented an unreasonable risk of harm. Cf. Manchenton, 135 N.H. at 305-306, 605 A.2d at 214 (finding that although the theft or the defendant's car and a thief's negligent driving of the stolen car were foreseeable events, the defendant did not owe the plaintiff a duty to guard against the auto theft because it did not present a reasonably foreseeable danger to the plaintiff); Thibeault, 136 N.H. at 701, 622 A.2d at 214 (finding that the injures that occurred in the case were the immediate result of a collision caused by the negligence of another and not the failure to wear a seat belt, which did not, by itself, create an unreasonable risk of injury); Millis, 144 N.H. at 449, 744 A.2d at 84 (finding that even if the defendant landlord could foresee that a rotted fence might present a general risk of harm to others, he had no reason to believe that allowing the plaintiff to remove the fence was unreasonably dangerous or would result in the injury that the plaintiff suffered).  The New Hampshire Supreme Court's admonition that

"[n]ot every risk that might be foreseen gives rise to a duty to avoid a course of conduct," applies in the instant case. Manchenton, 135 N.H. at 305, 605 A.2d at 214.

In sum, the Plaintiffs had the burden of setting forth facts that show that the defendant had a duty to conform to a standard of conduct.  See Restatement (Second) of Torts § 328A (1965). The Plaintiffs failed to meet their burden with regard to the Defendants' alleged liability for the airport accident. Accordingly, I find that the Defendants are entitled to judgment as a matter of law with respect to that aspect of the negligence claim asserted in this action.

Conclusion

For the reasons set forth above, the Defendants' motion for partial summary judgment (document no. 17), pertaining to whether the Defendants may be held liable for Mr. Price's accident in the Vancouver Airport on May 28, 2000, is granted.

**SO ORDERED.**

                              /s/ James R. Muirhead
                         James R. Muirhead
                         United States Magistrate Judge

Date: April 11, 2006

cc:  William E. Aivalikles, Esq.
     Jeffrey B. Osburn, Esq.

23